**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**Fort Myers Division**

**CASE NO.: 2:11-cv-566-FtM-29SPC**

**GARY W.  LAING and**
**SANDRA LAING,**

      **Plaintiffs,**

**v.**

**FRANK CORDI III, Joint and Severally, as President**
**for and illegally doing business as PACK & RIDE,**
**PACK & RIDE, INC., a Virginia Corporation, Joint and Severally,**
**and ESTES EXPRESS LINES, INC., a Virginia Corporation,**

      **Defendants.**

---

### DEFENDANT ESTES EXPRESS LINES, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT TO LIMIT LIABILITY AND INCORPORATED MEMORANDUM OF LAW

---

Defendant, ESTES  EXPRESS  LINES, INC. ("Estes"), by  through  its

undersigned attorneys,  moves this Honorable Court for an Order pursuant to Rule 56, Fed.

R. Civ. P., granting it partial summary judgment limiting liability, and as grounds therefor

would show the Court that there is no genuine issue of material fact, and that Estes is

entitled to such judgment as a matter of law, all as more particularly set forth below.

**Summary Judgment Standards**

In Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574 (1986), the

United States Supreme Court held that to defeat summary judgment, the opposing party

"must do more than simply show that there is some metaphysical doubt as to the material

facts." Id., 475 U.S. at 586.  Instead, "(w)here the record as a whole could not lead a

rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id.

Furthermore, summary judgment is appropriate where the non-moving party cannot establish an essential element of its case on which it will bear the burden of proof at trial. In such a case, there remains "no genuine issue of material fact", since a failure of proof as to an essential element renders all other facts and issues immaterial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986).

To survive summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Id. at 586.  A mere "scintilla" of evidence supporting the opposing party's position will not suffice; instead, there must  be a sufficient showing that a jury could reasonably find for that party.  Anderson, 477 U.S. at 252; see also Walker v. Darby, 911 F.2d 1573, 1577 (11t Cir. 1990).

If the evidence presented by the non-moving party in opposing summary judgment is merely colorable or is not significantly probative, summary judgment may be granted. See Dombrowski v. Eastland, 387 U.S. 82, 87 (1967); First National Bank of Arizona v. Cities Services Co., 391 U.S. 253, 290 (1968).

## Introduction

This matter arises out of the interstate transportation of a shipment of goods arranged by co-defendant Pack & Ride, Inc. ("Pack & Ride"), to be carried by Estes from Michigan to Florida.  Plaintiffs made arrangements with Pack & Ride to have a trailer dropped off at their home in Michigan, where they loaded it with their household goods, then requested that the trailer be transported to Florida.  Pack & Ride, in turn, engaged Estes as the carrier to deliver and later retrieve and transport the subject trailer.  Estes, pursuant to a bill of lading contract with the intermediary Pack & Ride, received and transported the subject trailer at the direction of the Pack & Ride.  Estes did not have any

2

direct contact with or receive any instructions from Plaintiffs; rather, all such instruction and direction came from the shippers' (Plaintiffs') intermediary, Pack & Ride.  Similarly, the shippers directed all their communications to their transportation intermediary, Pack & Ride.

Estes accepted the shipment on its own bill of lading which references and provides notice of the application of its EXLA 105 Series tariff.  The bill of lading contained a declared value box, which was left blank.  Moreover, Pack & Ride never informed Estes that there was any request for an increased released value, and Plaintiffs never made any attempt to declare a value directly to Estes. The bill of lading also states that it is subject to "all the terms and conditions of the Uniform Bill of Lading set forth in the National Motor Freight Classification 100-X and successive issues."

The shipment at issue was comprised of used household goods as clearly noted in the description on the bill of lading.  See Mat. Facts ¶¶ 9 - 11.  Governing tariff NMFC STB NMF 100-AI, at item 100240, Sub 1, states that used household goods are accepted at a released value not exceeding ten cents per pound, unless otherwise agreed in writing prior to transportation, and the shipper declares the value in the declared value box on the bill of lading.  See Mat. Facts ¶¶ 2 - 5.

Here, neither the shippers, nor the shippers' intermediary (Pack & Ride) ever indicated to Estes that a greater value was requested, so the freight was booked at the lowest available, discounted rate in accordance with that tariff item.  Simply stated, the shippers agreed to pay the lowest freight rate and in exchange received the lowest limitation of liability.  Moreover, according to the bill of lading, and as far as Estes knew, the shipper for this particular load of goods was Pack & Ride, and Pack & Ride expressly

3

agreed to Estes' limitation of liability.  Therefore, any recovery on the part of these Plaintiffs must be limited to no more than ten cents per pound per article as agreed by Pack & Ride.

## Statement of Material Facts

1.      At all times material, Estes was and is a duly licensed and authorized motor carrier for hire, transporting goods and general commodities in interstate commerce, subject to the jurisdiction of the Surface Transportation Board.  See Aff. of Albert D. Wilder, Jr. at ¶ 2.

2.      At all times material hereto, Estes had available and in effect its EXLA 105 series rules tariff, including its list of Governing Tariffs, (EXLA 105-N, Item 100) referencing National Motor Freight Classification tariff series 100.  See Wilder Aff. ¶3, See Exhibit "A."

3.      Item 350, Section 1, subsection E., of Estes' EXLA 105-N rules tariff, LIMITATION OF LIABILITY, states that Estes' "... maximum liability in the event of loss or damage ... will be limited to the *lowest* of the following:

1.      The actual value of the shipment at origin; or
2.      The valuation provided in Paragraph D, above; or
3.      The Released Value as stated in the National Motor Freight Classification 100 Series ... ."

See Exhibit "A." (Emphasis added)

4.      Estes' tariff is also referenced in the bill of lading by the following language: "... subject to ... rates, classifications and rules (Estes Express Lines 105 series) that have been established by the carrier... ."  See Wilder Aff. ¶5, Exhibit "B."

5.      Estes' bill of lading also references and incorporates the National Motor Freight Classification wherein it states that the bill of lading is subject to "all the terms and conditions of the Uniform Bill of Lading set forth in the National Motor Freight Classification 100-X and successive issues."    See Wilder Aff. ¶6, Exhibit "B."

6.     Governing Tariff NMFC STB NMF-100-AI, at item 100240, Sub 1, establishes the lowest released value for used household goods in an amount not exceeding ten cents per pound, unless otherwise agreed in writing prior to transportation, and the shipper declares the value in the declared value box on the bill of lading.  Although the bill of lading shows commodity Class 50 for the shipment, there is no corresponding commodity Class 50 in Tariff NMFC STB NMF-100-AI, Item 100240.   When that occurs, the released valuation defaults to the next higher commodity class, Class 100 (Item 100240, Sub 1), which provides for a limitation of ten cents per pound.  See Wilder Aff. ¶7, Exhibit "C."

7.     On or about June 3, 2009, Pack & Ride contacted Estes and requested that Estes provide an empty fifty-three foot trailer at 123 Marlene St., Milford, Michigan.  See Wilder Aff. ¶8, Exhibit "D."

8.     On or about June 4, 2009, Estes delivered an empty fifty-three foot trailer to 123 Marlene St., Milford, Michigan.  See Wilder Aff. ¶9.

9.     On or about June 8, 2009, Pack & Ride dispatched Estes to pick up the fifty-three foot trailer at 123 Marlene St., Milford, Michigan, and deliver it to 1222 NW 20th Avenue, Cape Coral, Florida.  See Wilder Aff. ¶10.

10.     On or about June 8, 2009 Estes issued a bill of lading for the transportation requested by Pack & Ride, in accordance with the request for transportation from Pack & Ride.  See Wilder Aff. ¶11, Exhibit "B."

11.     The bill of lading for the shipment at issue describes the commodity being shipped as "53 Feet of Trailer Space of used household goods." See Wilder Aff. ¶12, Exhibit "B."

12.     Pack & Ride expressly agreed to the terms of Estes' bill of lading, Estes'

EXLA 105-N Rules Tariff, and the NMFC terms and conditions.  See Wilder Aff. ¶13.

13.    No party ever declared any value for the subject shipment of goods to Estes prior to the subject transportation from Milford, Michigan to Cape Coral, Florida.  See Wilder Aff. ¶14.

14.    Estes had no communications with Plaintiffs prior to carriage or when the subject trailer was tendered to Estes at origin.  See Wilder Aff. ¶15.

15.    Pack & Ride agreed to Estes' limitation of liability in the amount of $.10 per pound per article.  See Wilder Aff. ¶16.

16.    There is no record of Plaintiffs ever requesting a copy of Estes' EXLA 105-N Rules Tariff or the NMFC Classification. See Wilder Aff. ¶17.

17.    The bill of lading contained no notice in regard to the potential for special and/or consequential damages, and it contained a blank declared value box.  See Wilder Aff. ¶18,  Exhibit "B."

18.    The bill of lading lists Pack & Ride as both the shipper and consignee.  See Wilder Aff. ¶19.

19.    On or about June 13, 2009, while the fifty-three foot trailer was in transit from Michigan to Florida, Pack & Ride advised Estes to stop the transportation and return the shipment to Michigan.  See Wilder Aff. ¶20.

20.    On or after June 13, 2009, Estes was informed by Pack & Ride that the goods could no longer be delivered back to Michigan, meaning that Estes would need to store the goods at its nearest terminal location.  See Wilder Aff. ¶21.

21.    On or about August 7, 2009, Estes was directed by Pack & Ride to deliver the goods to Cape Coral, Florida.  See Wilder Aff. ¶22.

22.     On or about August 7, 2009, delivery was refused at destination.  See Wilder Aff. ¶23.

23.     Following the refusal of delivery, Pack & Ride advised Estes to store the trailer at its Fort Myers, Florida terminal.  See Wilder Aff. ¶24.

24.     On or about November 13, 2009, Pack & Ride advised Estes to deliver the goods once again, and delivery of the shipment was completed pursuant to those instructions. See Wilder Aff. ¶25.

25.     The shipment consisted entirely of used household goods.  See Wilder Aff. ¶26.

26.     As the subject shipment weighed a total of 15,900 pounds, Estes' maximum liability based upon loss of the entire shipment would be $1,590.00, based upon a released rate of ten cents per pound.  See Wilder Aff. ¶27.

27.     Plaintiffs produced as part of their discovery numerous photographs of the trailer they describe in their second amended complaint as "an unmarked trailer."  The trailer has both a large painted Estes Express Lines banner and Estes Express Lines Logos in seven feet by four feet lettering.  See Notice of Filing ¶ 3, at attachment pp. 1-4; Second Amended Complaint ¶¶ 14-17.

28.     Plaintiffs' claim that they believed the "unmarked trailer belonged to the competitor of Pack & Ride" and they "still believed that the trailer and ramps belonged to the competitor" [Second Amended Complaint ¶ 16] is belied by their own document production.  The photographs that Plaintiffs produced, Notice of Filing ¶ 3, at attachment pp. 4-8, clearly show a security bulkhead and partition with all manner of identification pointing to none other than Pack & Ride.

## MEMORANDUM OF LAW

### Plaintiffs are Bound By The Terms and Limitations of Estes' Bill of Lading

A bill of lading, or contract of carriage, binds all parties to the prevailing terms and conditions of service.  The shipping documents bind all parties with an interest in the shipment even where, as here, an intermediary agreed to the terms of Estes' contract of carriage and tariff provisions on behalf of the Plaintiffs.  Plaintiffs are bound by the limitations that Pack & Ride, as intermediary, agreed to with downstream intermediaries, brokers, forwarders or carriers, such as Estes.  See Norfolk Southern Railway Co. v. James N. Kirby Pty. Ltd., 543 U.S. 14 (2004) (both the intermediary, who had dealt with the shipper directly, and the carrier that actually caused the damage, had limited their liability: "When an intermediary contracts with a carrier to transport goods the cargo owner's recovery against the carrier is limited by the liability limitation to which the intermediary and the carrier agreed."); Werner Enterprises, Inc. v. Westwind Maritime International, Inc., 554 F.3d 1319 (11th Cir. 2009) ("Carriers do not need to investigate upstream contracts.  They are entitled to assume that the party entrusted with the goods may negotiate a limitation of liability.").

Here, Gary and Sandra Laing contracted with Pack & Ride for transportation, logistics, and brokerage services on their behalf in regard to this shipment. See Mat. Facts ¶¶7-12, 15; Second Amended Complaint ¶¶ 7, 8 and 21.  Pack & Ride in turn contracted with Estes for the actual carriage from Michigan to Florida.  See Mat. Facts ¶¶ 7-12; Second Amended Complaint ¶¶ 9 and 21.

In Kirby, the shipper hired an intermediary, which hired a carrier, that in turn hired

another carrier to complete the transportation.  The shipper failed to declare a value to the intermediary, instead independently insuring the goods, and the intermediary in turn never declared a value to the carrier.  When the shipment was damaged in transit, the shipper's insurer paid the claim and sued in subrogation to recover what it had paid to the shipper. Id.

The shipper's insurer in Kirby sought to invalidate the limitation of liability agreed to by the intermediary and the initial carrier on the grounds that the shipper was not in privity of contract with that carrier.  The Supreme Court rejected this argument and upheld the limitation of liability accepted by the shipper's intermediary - despite the fact that the shipper may not have agreed to, or even been aware of, the limitation of liability.  Id.

The rule in Kirby is not based on agency law and requires no privity between the cargo owner and the downstream carrier.  Kirby, at 33.  This rule reaffirms the Supreme Court's early opinion in Great Northern Railway Co. v. O'Connor, 232 U.S. 508 (1914).  In Great Northern, the Court held that a shipper who entrusted her goods to a freight forwarder for transportation would be bound by the bill of lading that the freight forwarder signed with the carrier. The Court stated that the carrier was under no obligation to determine whether the freight forwarder had actual authority to bind the shipper to the terms of the bill of lading.  "In the absence of something to indicate that the transfer company was guilty of false billing, the carrier was not required to make special inquiry." Id. at 514.

Great Northern, citing a still earlier Supreme Court decision, noted that "the carriers [are] not concerned with the question of title, but must treat the forwarder as shipper."  Id. citing ICC v. Delaware, L. & W. R. Co., 220 U.S. 235 (1911).  Therefore, carriers are

9

entitled to take a bill of lading at face value, and absent a declaration of value by the shipper, they are entitled to limit their liability accordingly.  *See also* American Railway Express v. Lindenburg, 260 U.S. 584 (1923); Werner, *supra*.

This issue was also discussed in Burnell v. Butler Moving and Storage, 826 F.Supp. 65 (N.D.N.Y. 1993).  In Burnell, the plaintiff contracted with a freight forwarder to transport her household goods from New York to California.  The freight forwarder arranged to have the shipment transported by Roadway Express.  After the shipment was delivered to the plaintiff in damaged condition, she brought suit against Roadway Express.  Roadway Express moved for summary judgment on the ground that its tariff contained a limitation of liability in the amount of ten cents per pound for household goods.  The court, citing Great Northern, held:

> The facts of Great Northern are indistinguishable from the facts in the instant case.  Roadway had the right to assume that Mollen had the authority to agree to the terms of the shipment, and plaintiff has presented no evidence to the contrary.  Consequently, upon reconsideration the court is constrained by the Supreme Court's ruling in Great Northern to grant Roadway's motion for partial summary judgment.

Id., 826 F. Supp. at 68, 69.

In Nipponkoa Ins. Co. v. Atlas Van Lines, Inc., 2011 U.S. Dist. LEXIS 94384 (S.D. Ind. Aug. 23, 2011), following Kirby, the Court found that the shipper was bound by the limitation of liability agreed to between the intermediary and carrier, regardless of whether the shipper was aware of such limitation or whether it was even contained in the bill of lading.  Id. at 3 ("a shipper is bound by the terms, including liability limitations, negotiated with downstream carriers by intermediaries to whom a shipper entrusts its freight... The fact that TAMS did not know of the existence of this contract is irrelevant.")  See also,

Kawasaki Kisen Kaisha, Ltd. v. Plano Molding Co., 2008 U.S. Dist. LEXIS 34135 (N.D. Ill. April 25, 2008) "Provisions in a bill of lading issued to an intermediary bind the consignee and other parties on whose behalf the intermediary arranged the shipment."  The Kawasaki Court added that, "[t]his is true even without a showing of a traditional agency relationship between the consignee and the intermediary." Id. at 8, citing Kirby.

In ABN Amro Verzekeringen BV v. Geologistics Americas, Inc., 485 F.3d 85 (2nd Cir. 2007), the Second Circuit followed the binding precedent in Kirby, finding that the shipper was bound by the limitation of liability agreed to between the intermediary and carrier, regardless of whether the shipper was aware of such limitation or whether it was even contained in the bill of lading.  Id. at 97.

The Southern District of New York has also recognized and followed Kirby and Great Northern recently, in holding that "the cargo owner's [Ethicon's] recovery against the carrier is limited by the liability limitation to which the intermediary and carrier agreed." Royal & Sun Alliance Insurance Plc v. Rogers Transportation Management Services, Inc., 2010 WL 3291808 (S.D.N.Y. 2010); see also Goga v. Zim American Integrated Shipping Services Co., 2008 WL 2875059 (S.D.N.Y. 2008).

In Goga, citing Kirby, the court enforced the limitation of liability upon the shipper because "the intermediary who arranged with Zim for the Bill of Lading-apparently Palumbo International-did not declare a higher value for the cargo."  Id. The Court there found the Plaintiff's arguments unconvincing where it was shown that the intermediary accepted the limitation of liability because no value had been declared.

Further, when confronted with the plaintiff's arguments that the carrier should have advised the shipper as to the limitations of liability, the court stated that the carrier had no

11

responsibility to inform the shipper of anything, since the two had no dealings at all, and further found that the intermediary had adequate notice of the limitation. Id. at*5-6.  The Court went on to hold that "Goga is thus bound by the fact that Palumbo International did not declare a higher value." Id. at *6.

This rule, that a shipper is bound by the value its intermediary places on the shipment, has been followed by many courts since Great Northern.  In Morris v. Covan World Wide Moving, Inc., 144 F.3d 377 (5th Cir. 1998), the court was faced with a claim for damage to household goods.  The household goods shipper sued the carrier to recover the actual value of the property lost when the trailer in which the goods were traveling caught fire and destroyed the plaintiff's goods.  The shipper sought more than $54,000.00, which represented the alleged actual value of the property.  However, the shipper only declared a value of $29,000.00 for the shipment, which the court held to be the maximum amount of the carrier's liability. Id. at 383.  Here, as in that case, the shipment was undervalued on the bill of lading.  The shipper did not have to pay for the cost of the additional valuation, but the consequences of receiving the lower rate was that they accepted a greater risk of loss if anything happened to their goods.

The court reached a similar conclusion in Libby v. ABF Freight Systems, 2001 WL 1659223 (S. D. Fla. 2001).  The Libby court granted summary judgment for the carrier on a liability limitation of ten cents per pound, awarding a total of $582.40, after the shipper's household goods, worth $44,725.00, were destroyed.  The court found that the language in the bill of lading which said "Your belongings will have an insured value of only $.10 per pound covering only fire, accident and theft" was sufficient to limit the carrier's liability to ten cents per pound.  The plaintiff could have purchased extra liability coverage, but chose

12

not to.  Therefore, the court held, the plaintiff was limited to the ten cents per pound listed on the bill of lading.  See id. at *4.

Here, there was no value declared in the bill of lading's declared value box, which was left blank at origin.  See Mat. Facts ¶¶ 12 and 17.  Further, there was no indication to Estes from Pack & Ride or any other party that a higher released value was wanted.  See Mat. Facts ¶13.  Moreover, Pack & Ride agreed to Estes' limitation in the amount of $.10 per pound per article.  See Mat. Facts ¶15.  Plaintiff's Second Amended Complaint clearly states that Estes was the "sole licensed carrier" relative to the subject shipment (Second Amended Complaint, ¶ 38), and Plaintiffs were unable to assert even a single allegation that _any_ value was declared to Estes, or that _any specific instruction_ was provided to Estes. As a result, Kirby, Great Northern, Burnell, Werner, and Kawasaki provide the binding legal framework within which the undisputed facts of this case must be decided.  See also Talbots, Inc. v. Dynasty Int'l, Inc., 2011 U.S. Dist. LEXIS 94112 (D. Mass. 2011)  ("CSXI, as the contractual intermediary between CSXT and Plaintiffs, can limit CSXT's liability.").

Pack & Ride, a transportation broker, arranged with Estes to provide transportation of "53 Feet of Trailer Space of used household goods" from Michigan to Florida.  See Mat. Facts ¶11.  No value was declared for the goods contained within that "53 foot trailer", all of which consisted of used household goods. See Mat. Facts ¶13; Second Amended Complaint ¶¶ 9, 17.  Therefore, in accordance with Estes' tariff, any liability has been effectively limited to ten cents per pound per article.  See Mat. Facts ¶¶ 25 and 26.

Plaintiffs' assertions that they were unaware of who dispatched Estes is disingenuous at best, as are the claims that Plaintiffs did not intend to contract with Pack

& Ride.[1]  The simple facts of this case are that Plaintiffs solicited brokerage services from Pack & Ride, and then Pack & Ride brokered the transportation of the trailer loaded by Plaintiffs to Estes.  Moreover, there is simply no basis to support Plaintiffs' argument that their confusion as to whom the load was tendered should vitiate the limitation of liability pursuant to which Estes agreed to carry this shipment of goods for Pack & Ride.

### Estes' Liability is Limited to $.10 Per Pound

In the Eleventh Circuit, limitations of liability were addressed in Siren, Inc. v. Estes Express Lines, 249 F.3d 1268 (11th Cir. 2001).  In Siren, the shipper received a directed verdict at trial in the amount of its actual damages, $46,982.16, after the shipment was lost in transit.  The carrier, however, claimed that the shipper had agreed to limit its liability to $8,309.00 under the terms of the bill of lading.  The circuit court, in finding that the carrier had limited its liability, looked to the fact that the shipper failed to declare a value in the space provided on the bill of lading and noted:

> ...the statute requires nothing more than a valid written contract between the parties establishing a reasonable value, above which the carrier will not be liable.

249 F.3d 1271.

Here, the declared value box on the bill of lading was left blank, meaning there was no indication that a higher value was ever requested or declared by the shipper or anyone else involved in the transportation.  Estes received the goods pursuant to the terms of the

---

[1]  Plaintiffs failed to produce any document as to the "other" entity they claim was supposed to pick up the shipment, and they failed to even identify any such entity. Second Amended Complaint, ¶ 12.  Plaintiffs' Answers to Defendant Estes Express Lines, Inc.'s First Set of Interrogatories, at paragraph 2, Request #4.  The only identification evidence they did produce proved they dealt with Pack & Ride.  See Mat. Facts ¶ 28.

bill of lading and subject to its EXLA 105-N rules tariff and the NMFC (STB NMF-100 AI) tariff.  See Mat. Facts ¶¶ 2-6.[2]

In this case, the bill of lading, Estes' EXLA 105-N rules tariff and the NMFC tariff (STB NMF-100 AI) form the written contract of carriage between the parties, as permitted by 49 U.S.C. § 14706(c)(1)(A).  These documents together demonstrate that the maximum the Plaintiffs may recover is ten cents per pound, or $1,590.00.

The Plaintiffs had an option.  They could accept the discounted rate for this transportation and ship their goods very cheaply, or pay the applicable charge to declare a value.  Pack & Ride, (Estes' shipper and Plaintiffs' intermediary) chose the former.  Moreover, it appears that Pack & Ride did so because no value was declared to it, as Plaintiffs were seeking an inexpensive, discounted rate for their transportation.

This conclusion is further supported by the means of transportation chosen by the Plaintiffs.  They did not seek out a household goods mover to come to their residence, load their goods, transport their goods and then unload their goods.  That service, provided by many household goods van lines, would likely have cost Plaintiffs a great deal more than the quote they received from Pack & Ride.  Quite obviously, Plaintiffs were penny wise and pound foolish. Now, all they are left with is ten cents per pound for their goods, since they did not want to spend the money to protect their goods from the risks of interstate motor carriage by declaring a value, by properly packaging goods, or by having them

---

[2] The presence of a declared value box provides the reasonable opportunity to choose a higher level of liability.  See, Am. Express Co. v. U.S. Horse Shoe Co., 244 U.S. 58 (1917);  Hughes v. United Van Lines, Inc., 829 F.2d 1407, 1419 (7th Cir.1987); Norton v. Jim Phillips Horse Transp., Inc., 901 F.2d 821 (10th Cir.1989);  Hopper Furs, Inc. v. Emery Air Freight Corp., 749 F.2d 1261 (8th Cir.1985);  Schweitzer Aircraft Corp. v. Landstar Ranger, Inc., 114 F. Supp.2d 199 (W. D. N. Y. 2000).

professionally packed or loaded.

"A party's failure to read the terms of an incorporated document does not make those terms any less binding." 4 Connections LLC v. Optical Communications Group, Inc., 2009 WL 805134, at 4 (E. D. N. Y. 2009), citing PaineWebber, Inc. v. Bybyck, 81 F.3d 1193, 1201 (2nd Cir. 1996).  Whether Pack & Ride actually received or read Estes' tariff is immaterial, because Pack & Ride knowingly accepted the terms.  Moreover, awareness of the tariff on the part of the Plaintiffs is even less important, because they chose to have their intermediary, Pack & Ride, make all the shipping arrangements on their behalf. See Kirby, Great Northern, Burnell, Werner, and  Kawasaki, supra.

In the absence of a higher declared value, and here there was none, the maximum released value for used household goods is $.10 per pound.  This shipment consisted of used household goods.  Mat. Facts ¶25.  As the entirety of the subject shipment weighed 15,900 pounds, Estes' maximum liability would therefore be $1,590.00.  See Mat. Facts at ¶ 26.

### Limitation of Liability is Valid Regardless of any Want of Care

Estes' limitation of liability remains valid without regard to the alleged degree of negligence, or any claims of wilful, wanton or reckless conduct.  Deiro v. American Airlines, Inc., 816 F.2d 1360 (9th Cir. 1987).

In Deiro, Plaintiff filed an action for breach of contract, negligence and willful and wanton behavior, stemming from the death of seven greyhound racing dogs transported by the airline.  Id. at 1362.  The plaintiff claimed that although he had advised the airline several times that heat and lack of proper ventilation and water for the dogs while they were left caged on an airport tarmac was critical, the airline personnel refused to attend to

16

the animals or allow the plaintiff to do so himself.

The Ninth Circuit upheld the district court's grant of partial summary judgment limiting liability to $750.00 on a $900,000.00 claim, finding that Deiro had been provided with a full and fair opportunity to declare a higher value, and that even gross negligence will not vitiate limits of liability. Id. at 1365-1366, citing Glickfeld v. Howard Van Lines, Inc., 213 F.2d 723, 727 (9th Cir. 1954) ("The carrier may properly limit its liability where the conversion is by third parties or even by its own employees").  The bright line rule from the Ninth Circuit is as follows:

> "Under the federal common law, only an appropriation of property by the carrier for its own use will vitiate limits on liability. (citations omitted).  Consequently, if a liability limitation is valid, a passenger's recovery for damage cannot exceed the released value regardless of the degree of the carrier's negligence."

Id. at 1366, citing Southeastern Express Co. v. Pastime Amusement Co., 299 U.S. 28, 29-30 (1936) ("The words of the statute are comprehensive enough to embrace all damages resulting from **any** failure to discharge a carrier's duty with respect to **any** part of the transportation to the agreed destination." [emphasis added])

See also, Quasar Co. v. The Atchison, Topeka And Santa Fe Ry. Co., 632 F.Supp. 1106, 1113 (N.D. Ill. 1986) ("The essential system has not changed and that system does not consider a carrier's gross negligence to void the limitation of liability of a released value rate"); American Cyanamid v. New Penn.Motor Exp., Inc., 979F.2d 310, 315-317 (3rd Cir. 1992) (Intentional deviation from terms of bill of lading will not void limitation of liability, regardless of reasonableness of limitation in regard to actual value of goods.); Rocky Ford Moving Vans, Inc. v. U.S., 501 F.2d 1369 (8th Cir. 1974) ("Nor do we find merit, under the

facts of this case, in the Government's attempted distinction between willful breaches of carriage contracts and those which are merely negligent."); Ingram Micro, Inc. v. Airoute Cargo Express, Inc., 154 F. Supp.2d 834, 843-844 (S. D. N. Y. 2001) (Under federal common law, carrier's limitation of liability on its bill of lading was enforceable against shipper, even if disappearance of cargo was result of carrier's agent's negligence and shipper did not expressly agree to carrier's limitation of liability, where shipper was aware of limitation of liability, bill of lading was standard form, shipper purchased separate insurance, shipper had at least equal bargaining power, and shipper had the option of declaring value, but chose not to do so in order to receive lower rate.)

### Conclusion

Plaintiffs' unsubstantiated and unsupported claim that they "found a comparable and more favorable agreement with a competitor of Pack & Ride" who, by fortuitous happenstance, delivered a trailer to the Plaintiffs' home on the same day Estes delivered a trailer as requested by Pack & Ride, is just so much smoke and mirrors.

Plaintiffs produced no documents from this alleged competitor, Plaintiffs cannot recall the name of this alleged competitor, Plaintiffs cannot recall with whom they spoke or when or even how they communicated with this alleged competitor, Plaintiffs cannot explain why during the days they spent with the Estes trailer in front of their home loading their goods, no trailer was delivered by this alleged competitor, or why the alleged competitor never followed up or was heard from again.  See Second Amended Complaint ¶¶9-19.

What we do have are Plaintiffs' own photographs showing a trailer clearly covered in Estes markings and logos along with clearly marked Pack & Ride security equipment.

See Mat. Facts ¶¶ 27-28.

Regardless, the material facts necessary to grant partial summary judgment limiting liability to Estes Express Lines remain undisputed: Pack & Ride acted as Plaintiffs' intermediary and arranged for Estes to deliver an empty trailer to Plaintiffs' home, and then to transport a loaded, sealed trailer;  Pack & Ride expressly agreed to Estes' bill of lading and incorporated tariffs; the tariffs provide that the subject shipment, consisting of used household goods, were released to a value of ten cents per pound in the absence of a higher declared value; Pack & Ride did not declare a value to Estes and accepted the released rate of ten cents per pound; Estes accepted the shipment at the ten cents per pound value; the shipment weighed 15,900 pounds and contained only used household goods; Estes' maximum liability is therefore $1,590.00.

A carrier such as Estes need not investigate upstream contracts, and is entitled to accept the agreement as to limitations of liability provided by a transportation intermediary. Kirby, Great Northern, Burnell, Werner, and Kawasaki, *supra*.   Moreover, a carrier is insulated from any claim by the actual shipper that it was unaware of the agreement by the intermediary to a released value or limitation of liability. Id. Any cause of action the Plaintiffs have in regard to the failure of Pack & Ride to declare a value to Estes would lie solely against Pack & Ride. Id.

Based upon these facts, none of which can be contradicted by any record evidence, Estes has properly limited its liability.  Therefore, this Court should grant Estes' motion for partial summary judgment and limit Plaintiffs' maximum recovery to no more than $1,590.00.

WHEREFORE, Defendant Estes Express Lines, Inc. respectfully requests that this

Court grant its motion as aforesaid, and order such other and further relief as this Court

deems just and proper.

Respectfully submitted,

**Lawrence J. Roberts & Associates, P.A.**
Attorneys for Defendant
Estes Express Lines, Inc.
249 Catalonia Avenue
Coral Gables, Florida 33134
Phone: (305) 441-7882
Fax: (305) 441-7883
Email: lroberts@lrobertsandassociates.com

By: ___/s/ LAWRENCE J. ROBERTS___
LAWRENCE J. ROBERTS, ESQUIRE
Florida Bar No.: 343218
Trial Counsel

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 19, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Respectfully submitted,

**Lawrence J. Roberts & Associates, P.A.**
Attorneys for Defendant
Estes Express Lines, Inc.
249 Catalonia Avenue
Coral Gables, Florida 33134
Phone: (305) 441-7882
Fax: (305) 441-7883
Email: lroberts@lrobertsandassociates.com

By: ___/s/ LAWRENCE J. ROBERTS___
LAWRENCE J. ROBERTS, ESQUIRE
Florida Bar No.: 343218
Trial Counsel

20

**SERVICE LIST**

**Gary W.  Laing, et al. v. Frank Cordi III, Pack & Ride, Inc., et al.**
**Case No.: 2:11-cv-566-FtM-29SPC**
**United States District Court, Middle District of Florida**

**Notice will be electronically mailed to:**

Robert M. Burrell, Esq.
**UAW Legal Services Plans**
2454 McMullen Booth Road
Bldg.  B - Suite 425
Clearwater, FL 33759
Phone: (727) 669-5319
Fax: (727) 669-0978
Email:  robertbu@uawlsp.com

*Counsel for Plaintiffs*